IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DALPHA DAWN F.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:19-cv-00708-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Dalpha Dawn F. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Social Security Act. For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.
[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

1 - Opinion and Order

## BACKGROUND

Plaintiff was born in 1965 and was 49 years old on the date of her alleged onset of disability. Tr. 188. She alleges that she became disabled on March 1, 2015, due to rheumatoid arthritis, polyarthritis, and migraines. Tr. 6. Plaintiff attended two years of college, and has past work as a cashier, apartment manager, and service dispatcher. Tr. 58, 263. Plaintiff has undergone surgeries on her spine, hands, and right shoulder. Tr. 461, 475, 608.

Plaintiff applied for disability benefits on April 19, 2015, and her application was denied initially and upon reconsideration. Tr. 90-92, 95-97. Plaintiff requested a hearing and appeared before an Administrative Law Judge ("ALJ") on July 10, 2017. Tr. 36. The ALJ issued an unfavorable decision on September 28, 2017. Tr. 18-35. Plaintiff appealed the decision and submitted memorandum to the Appeals Council. Tr. 332-34.

On March 6, 2019, the Appeals Council issued an unfavorable decision. Tr. 1-9. The Appeals Council adopted the ALJ's ultimate finding that Plaintiff is not disabled, but found that Plaintiff engaged in substantial gainful activity in 2016, and extended Plaintiff's date last insured to March 31, 2019. Tr. 6. The decision of the Appeals Council constitutes the final decision of the Commissioner. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE APPEALS COUNCIL'S FINDINGS

Applying the above analysis, the Appeals Council made the following findings:

1. Plaintiff met the special earnings requirements of the Act on March 1, 2015, the date the claimant stated she became unable to work and continues to meet them through March 31, 2019. The claimant engaged in substantial gainful activity in 2016 when she earned $19,744. Tr. 6.

2. Plaintiff has the following severe impairments: rheumatoid arthritis, polyarthritis, and migraines, but did not have an impairment or combination of impairments listed in or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 6.

3. Plaintiff had the residual functional capacity to perform a restricted range of light work except she could stand and walk for four hours in an 8-hour workday; sit for six hours;

occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crawl; never kneel or crouch; occasionally handle and finger; with no concentrated exposure to humidity or vibration, or to hazards or extreme temperatures. Tr. 6.

4. Plaintiff's alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision. Tr. 6.

5. Plaintiff was unable to perform past relevant work. Tr. 6.

6. At the time of the alleged onset date, Plaintiff was 49 years old, defined as a younger person. Plaintiff subsequently attained age 50 which is defined as an individual closely approaching advanced age. Plaintiff has a high school education. Plaintiff's past relevant work was semiskilled or skilled. Plaintiff had no skills transferable to skilled or semiskilled occupations within her residual functional capacity. Tr. 6.

7. Plaintiff had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and rules 202.21 and 202.14 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the Plaintiff's exertional and nonexertional impairments do not allow her to perform the full range of the light exertional level, using the above-cited rule as a framework for decision making, and the job of dealer account investigator, there are a significant number of jobs in the national economy that she could perform. Tr. 7.

8. The claimant is not disabled as defined in the Social Security Act at any time through September 28, 2017, the date of the Administrative Law Judge's decision. Tr. 7.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

# DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the Appeals Council's step five finding is supported by substantial evidence in the record and constitutes a significant number of jobs in the national economy.

2. Whether the Appeals Council's step one finding is supported by substantial evidence in the record.

3. Whether the Appeals Council and the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, to reject Plaintiff's testimony.

## I. The Appeals Council made a reversable error in its step five findings.

Plaintiff argues that the Appeals Council erred at step five in finding that the job of dealer account investigator constituted a significant number of jobs in the national economy that Plaintiff could perform. At step five, an ALJ is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). Information in the *Dictionary of Occupational Titles* (DOT) is given a rebuttable presumption with regard to how a job is classified. *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008), citing *Johnson v. Shalala*, 60 F.3d 1428, (9th Cir. 1995). An ALJ may rely on expert testimony that contradicts the DOT, "but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

The Ninth Circuit has not created "a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (amend. Nov. 14, 2012). While the Ninth Circuit acknowledged that the Eighth Circuit Court of Appeals has found 10,000 jobs in the national economy to be a significant number in *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), it has yet to endorse a number below 25,000 with respect to the significant number standard. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). A

subsequently unpublished Ninth Circuit decision that interpreted *Gutierrez* rejected 10,000 as a significant number. *Randazzo v. Berryhill*, 725 F.Appx. 446, 446 (9th Cir. 2017).

*Randazzo* and *Gutierrez* are the clearest indication of where the Ninth Circuit sees the numerical floor for what constitutes a significant number of national jobs. That number is at or around 25,000. In *Gutierrez,* the ALJ found that the claimant could work as an assembler, of which there were 15,000 such jobs available nationally, and as an almond blancher, of which there were 10,000 jobs available nationally. *Gutierrez,* 740 F.3d at 521. The court combined these two jobs to find that 25,000 jobs qualified as a significant number of jobs in the national economy. *Id.* at 529.

In this case, the Commissioner argues that any combination of the jobs identified by the VE at Plaintiff's hearing would be a significant number. During Plaintiff's hearing, the VE identified both light and sedentary positions that Plaintiff could potentially perform in addition to the position of dealer account investigator, including surveillance system monitor (4,500 jobs nationally), elections clerk (203,000 jobs nationally), and a call-out operator (5,900 jobs nationally). Tr. 60. However, when the ALJ asked the VE whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC, the VE identified only two jobs: furniture rental clerk with 50,000 positions nationally and dealer account investigator with approximately 7,100 positions nationally. Tr. 59-60. The ALJ's decision in this case mentions only those two jobs. Tr. 30.

Plaintiff appealed the ALJ's decision to the Appeals Council and argued that the job of furniture clerk conflicted with Plaintiff's RFC because it required occasional crouching. Tr. 6, 332-33. The Appeals Council did not specifically address Plaintiff's argument in its decision, but it did omit the position of furniture clerk from its findings regarding Plaintiff's ability to

work. The Appeals Council concluded, "Using the job of dealer account investigator identified by the vocational expert at the hearing, a person with these vocational factors and with the residual functional capacity to perform a reduced range of light work is not disabled . . . in as much as there are a significant number of jobs in the national economy that she could perform." Tr. 6.

While this Court is required to consider the entire record as a whole, it cannot affirm the Commissioner's decision on grounds that the Commissioner did not invoke. Therefore, this Court may not consider all the potential jobs identified by the VE at the hearing when those jobs were not discussed by the ALJ or the Appeals Council in the relevant findings and decisions. Based on the caselaw on what signifies a "significant number of jobs," this Court finds that the Appeals Council erred by finding that the job of dealer account investigator, which has approximately 7,100 jobs nationally, represented a significant number of jobs in the national economy that Plaintiff can perform.

## II. The Appeals Council made a reversable error in its step one findings.

Plaintiff challenges the Appeals Council's finding that she engaged in substantial gainful activity in 2016. A claimant is not disabled at step one if she engages in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i), 404.1520(b). If a claimant's earned wages meet or exceed the amounts the agency calculates as SGA, then the earnings create a rebuttable presumption that the claimant is not disabled during the periods she worked at that level. 20 C.F.R. § 404.1574; *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); *see also* POMS DI 10501.015 (listing the amounts).

An unsuccessful work attempt is an exception to the SGA rule. 20 C.F.R. § 404.1574(a)(1). A work attempt is considered "unsuccessful" if the claimant's impairment

caused her to stop working or reduce her earnings to below SGA levels. 20 C.F.R. § 404.1574(c). There must be a significant break in the continuity of work before an individual can begin an unsuccessful work attempt. 20 C.F.R. § 404.1574(c)(2). Prior work will be considered as discontinued for a significant period if the individual was out of work for at least 30 consecutive days. *Id.* Prior work is also considered as discontinued "if, because of your impairment, you were forced to change to another type of work or another employer." *Id.*

In this case, the ALJ found Plaintiff's work as a property manager in 2016 to be an unsuccessful work attempt. The ALJ wrote,

> The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. The claimant had second quarter 2015 earnings of $377, third quarter 2016 earnings of $8,779, combined fourth quarter 2016 earnings of $2,102, and first quarter 2017 earnings of $720. Her average monthly earnings in third quarter 2016 were above the level of substantial gainful activity. Her earnings were from work as a property manager. She testified that she lost this job due to complaints about her attitude. She reported being irritable due to her pain symptoms. It appears that her job as a property manager ended due to her medical conditions. The undersigned finds that this was an unsuccessful work attempt.

Tr. 23. On appeal, the Appeals Council found that an "updated electronic query" indicated that Plaintiff earned more in 2016 than the ALJ was aware of. The Appeals Council wrote, "The Administrative Law Judge found that the claimant was not disabled through what he thought was the claimant's date last insured of June 30, 2017. The claimant had earnings, however, in 2016 and 2017 that extended her date last insured through March 31, 2019." Tr. 4. "[A]n updated electronic query indicates that the claimant earned $19,744 in 2016. This is above the substantial gainful activity level for that year; therefore, the Appeals Council finds that the claimant engaged in substantial gainful activity in the year 2016." Tr. 5.

Plaintiff argues that the Appeals Council failed to consider that Plaintiff engaged in an

unsuccessful work attempt in the year 2016. During the hearing, Plaintiff testified that she worked as a property manager from 4/1/16 through 10/6/16. Tr. 51. Plaintiff was terminated from her job as a property manager in October 2016 because of three write-ups from tenant complaints about her attitude. Tr. 51-52. She testified that her pain and pain medications contributed to her bad attitude. Tr. 50-51. The wage information in the record indicates that Plaintiff had a gap in her earnings between the second quarter of 2015 while employed at Lonoke County Safe Haven Inc and the third quarter of 2016 while employed at Templeton Property Management. Tr. 218-19. This gap in earnings appears to satisfy the 30-day break in continuity of work required before an unsuccessful work attempt may start. Plaintiff got a new job at the end of 2016 as a dispatcher, but was quickly terminated in December 2016 because she was making a lot of mistakes and could not remember her training. Tr. 49-50. The ALJ did not mention her job as a dispatcher in 2016, but the ALJ did determined that her work as a property manager ended due to her medical conditions and was an unsuccessful work attempt. Tr. 23.

Therefore, this Court finds that Plaintiff has met her burden to rebut the presumption that her SGA earnings alone established she was not disabled in 2016. Despite the update earnings query, the Appeals Council should have considered Plaintiff's work history and the reasons for why she was terminated from her jobs in 2016, as the ALJ did. The Appeals Council failed to describe with specificity in which quarters of 2016 Plaintiff earned $19,744, and whether this amount was earned from one employer or a variety of different employers.

### III. The Court finds no reversable error regarding Plaintiff's symptom testimony.

Plaintiff challenges the ALJ's treatment of her testimony regarding the severity of her symptoms. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce

11 - Opinion and Order

objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

In this case, the Appeals Council and the ALJ agreed that Plaintiff had severe medically determinable impairments of rheumatoid arthritis, polyarthritis, and migraines. Tr. 6, 23. The Appeals Council adopted the ALJ's conclusions regarding Plaintiff's symptom testimony. Tr. 5-6. Plaintiff testified that she is unable to use her hands for work activities such as typing or writing; she has difficulty with exertional and postural activities due to stiffness and pain; it takes her several hours to be able to move in the morning; and she has three migraine headaches a

week. Tr. 26. After careful review of Plaintiff's symptom testimony and the ALJ's reasoning, the Court finds that the ALJ carried his burden in providing clear and convincing reasons for finding Plaintiff's subjective testimony "not entirely consistent with the medical evidence."

First, the ALJ found that Plaintiff's testimony conflicted with the medical opinions. Tr. 26. A contradiction between a claimant's testimony and medical opinions about her abilities is a sufficient basis to discount the testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). A medical expert reviewed all of the records and testified at the hearing that Plaintiff's limitations would allow her to perform a reduced range of light work. Tr. 44-45. The State agency reviewing experts reached similar conclusions. Tr. 72-74, 84-87. Plaintiff has not challenged these medical opinions. The ALJ provided record support for finding her testimony of debilitating symptoms for several hours in the morning inconsistent with the medical evidence by citing to a 2016 medical record where Plaintiff reported having morning stiffness for only 20 minutes. Tr. 27. It was reasonable for the ALJ to resolve this inconsistency by giving greater weight to the contemporaneous statement made by Plaintiff in the course of treatment.

Second, it was reasonable for the ALJ to find that Plaintiff's symptoms improved with medications and comment that her pain medication was not increased or changed significantly since the alleged onset of disability. Tr. 27. Improvement with conservative treatment is a convincing reason to discount an allegation of disabling symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The Court finds that the ALJ's comments about her medication were made in the context of evaluating Plaintiff's reports to her healthcare provider in 2016 that she was doing better than she had a year prior in terms of her functioning and that she was able to work five days a week as a property manager despite her pain. Tr. 27. The ALJ further noted

13 - Opinion and Order

that in 2017, Plaintiff was not observed to have new or worsening RA symptoms, and that she was reportedly taking methotrexate injections twice a week in March 2017, but at the hearing, she reported taking injections once a week on Fridays. *Id.* Plaintiff clarifies that in 2017 her pain medication was changed from 500 mg to 2 tablets twice a day and that she started methotrexate. Tr. 448-49. Approximately a week after starting methotrexate, her doctor increased her dose from 0.8 cc to 1.0 cc by injection each week. Tr. 438. Plaintiff argues the ALJ failed to note these changes and also failed to note that Plaintiff was at the maximum dosage of Tramadol. Tr. 618. Plaintiff further explains that her methotrexate dosage was decreased by the time of the hearing because she was having side effects from the higher dosage. Tr. 621. The Court is not a medical expert in the position to determine whether these details establish a significant change in the course of Plaintiff's treatment for RA. Nonetheless, while these details may provide a more in-depth explanation about her treatment, they do not establish that the ALJ erred in commenting that her dosage of methotrexate had decreased by the hearing or commenting that her pain medication had not changed significantly since the alleged onset of disability.

Third, it was not unreasonable for the ALJ to consider that Plaintiff was physically able to do the jobs that she worked after her alleged onset date. The ALJ noted,

> The claimant's activities of daily living are at least somewhat less limited than would be expected given her allegations of disabling symptoms and limitations. Since the alleged onset of disability, she worked several jobs. She worked as a property manager, was a dispatcher, and provided companionship for disabled clients. She did not testify that she was physical unable to do these jobs. She reported being fired from her work as a property manager and companion due to complaints about her attitude. She reported being fired from her work as a dispatcher due to problems with accuracy on job tasks. Her pain symptoms may have contributed to her difficulties with working these jobs, but her testimony suggested that she was physically able to do the jobs.

14 - Opinion and Order

Tr. 26-27. The ALJ noted that Plaintiff's pain may have contributed to her losing these jobs. It was not unreasonable for him to still consider that her ability to complete the physical requirements of these jobs for 13 to 40 hours per week conflicts with her testimony that, for example, she could not work because she could not use her hands and would need extra breaks. Tr. 52. It also conflicts with her testimony that she could not work around people because she had "no immune system." Tr. 56.

Fourth, it was not unreasonable for the ALJ to consider Plaintiff's crochet hobby when evaluating her symptom testimony regarding her inability to use her hands. The ALJ wrote that Plaintiff reported having difficulty with using her hands for activities such as dressing and grooming, and that she reported not being able to do sewing or arts and crafts. Tr. 27. The ALJ concluded that these reports seemed inconsistent with her testimony that she spends time crocheting, a task that requires hand movement and fingering. Plaintiff argues that she crochets in order to help with her RA symptoms, but this explanation does not invalidate the ALJ's conclusion. Moreover, the medical expert testified that Plaintiff could "frequently handle and finger," but the ALJ explicitly found Plaintiff's allegations of difficulty using her hands more persuasive and accounted for her testimony by limiting her to no more than occasional handling and fingering. Tr. 26.

Finally, Plaintiff challenges the ALJ's finding that Plaintiff has been able to live independently since the alleged onset of disability, which suggests that she is able to do household activities without assistance at times. Tr. 27-28. Plaintiff testified that since February of 2016, she has been living with a friend in his apartment (Tr. 48), and before that she was living with her husband (Tr. 393). Plaintiff stated that her roommate scrubs pots and pans and switches out the laundry because she is unable to perform these activities. Tr. 53. While the

ALJ was incorrect about Plaintiff living alone, the Court finds this error harmless and not a persuasive reason to reverse the entirety of the ALJ's findings regarding Plaintiff's symptom testimony. Plaintiff's inability to scrub pots and pans or switch the laundry would be accounted for by the ALJ limiting Plaintiff to a restricted range of light work with no more than occasional handling and fingering.

Therefore, the Court finds no reversable error on the issue of Plaintiff's symptom testimony.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

Upon remand, the Commissioner is ordered to (1) provide evidence, if any, that demonstrates that other work beyond that of a dealer account investigator exists in significant numbers in the national economy that Plaintiff is capable of performing based on her age, education, work experience, and RFC; and (2) consider Plaintiff's work history and determine whether all or part of Plaintiff's 2016 earnings were from an unsuccessful work attempt.

It is so ORDERED and DATED this __26__ day of May, 2021.

MARK D. CLARKE
United States Magistrate Judge